UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRYAN ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>CANTEL MEDICAL CORP., CHARLES M. DIKER, GEORGE L. FOTIADES, ALAN R. BATKIN, ANN E. BERMAN, MARK N. DIKER, ANTHONY B. EVNIN, LAURA FORESE, RONNIE MYERS, PETER PRONOVOST, and KAREN N. PRANGE,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Bryan Anderson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.    This is an action brought by Plaintiff against Cantel Medical Corp. ("Cantel" or the "Company") and the members of Cantel's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Cantel will be acquired by STERIS plc ("STERIS") through its subsidiaries Solar New US Holding Co, LLC ("US Holdco") and Crystal Merger Sub 1, LLC ("Crystal Merger Sub") (the "Proposed Transaction").

2.      On January 12, 2021, STERIS and Cantel issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated October 15, 2020 (the "Merger Agreement") to sell Cantel to STERIS.   Under the terms of the Merger Agreement, Cantel shareholders will receive: (i) $16.93 in cash, and (ii) 0.33787 ordinary shares of STERIS for each Cantel share they own (the "Merger Consideration").   The Proposed Transaction is valued at approximately $4.6 billion.

3.      On April 1, 2021, Cantel filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.   The Proxy Statement, which recommends that Cantel stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Company management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (ii) the background of the Proposed Transaction.   Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Cantel's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains its principal executive offices in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Cantel.

9.      Defendant Cantel is a Delaware corporation, with its principal executive offices located at 150 Clove Road, Little Falls, New Jersey 07424.  Cantel is a leading global company dedicated to delivering innovative infection prevention products and services for patients, caregivers, and other healthcare providers which improve outcomes, enhance safety and help save lives.  Cantel's common stock trades on the New York Stock Exchange under the ticker symbol "CMD."

10.      Defendant Charles M. Diker ("Charles Diker") has been Chairman of the Board since 1986 and a director of the Company since 1985.

11.      Defendant George L. Fotiades ("Fotiades") is Chief Executive Officer ("CEO") of the Company and has been a director since 2008.

12.      Defendant Alan R. Batkin ("Batkin") has been a director of the Company since 2004.

13.     Defendant Ann E. Berman ("Berman") has been a director of the Company since 2011.

14.     Defendant Mark N. Diker ("Mark Diker") has been a director of the Company since 2007.

15.     Defendant Anthony B. Evnin ("Evnin") has been a director of the Company since 2017.

16.     Defendant Laura Forese ("Forese") has been a director of the Company since 2015.

17.     Defendant Ronnie Myers ("Myers") has been a director of the Company since 2016.

18.     Defendant Peter Pronovost ("Pronovost") has been a director of the Company since 2017.

19.     Defendant Karen N. Prange ("Prange") has been a director of the Company since 2019.

20.     Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     STERIS is a public limited company incorporated under the laws of Ireland on December 22, 2016, with its principal executive offices located at 70 Sir John Rogerson's Quay, Dublin 2, Ireland D02 R296.  STERIS is a leading provider of infection prevention and other procedural products and services.  STERIS offers its customers a unique mix of innovative capital equipment products, such as sterilizers and washers, surgical tables, lights and equipment management systems and connectivity solutions such as operating room integration; consumable products including detergents and gastrointestinal endoscopy accessories and other products and services, including equipment installation and maintenance, microbial reduction of medical devices, instrument and scope repair solutions, laboratory services and outsourced instrument

reprocessing.  STERIS's common stock trades on the New York Stock Exchange under the ticker symbol "STE."

22.     US Holdco is a Delaware limited liability company and a wholly owned subsidiary of STERIS.

23.     Crystal Merger Sub is a Delaware corporation and wholly owned subsidiary of US Holdco.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

24.     Cantel is a leading provider of infection prevention products and services in the healthcare market.  The Company operates in four segments through wholly-owned subsidiaries in the U.S. and internationally: Medical, Life Sciences, Dental and Dialysis.  Most of Cantel's equipment, consumables and supplies are used to help prevent the occurrence or spread of infections.  Cantel's products include specialized medical device reprocessing systems for endoscopy and renal dialysis, advanced water purification equipment, sterilants, disinfectants and cleaners, sterility assurance monitoring products for hospitals and dental clinics, disposable infection control products primarily for dental and GI endoscopy markets, instruments and instrument reprocessing workflow systems serving the dental industry, dialysate concentrates, hollow fiber membrane filtration and separation products.  Additionally, Cantel provides technical service for its products.

25.     On March 9, 2021, Cantel announced its second quarter fiscal year 2021 financial results, reporting net sales of $294.0 million, up 1.9% compared to the same quarter in the prior year; GAAP earnings per diluted share of $0.27, compared to a GAAP loss per diluted share of $(0.05) in the prior year period; non-GAAP earnings per diluted share of $0.79, a 29.5% increase compared to non-GAAP earnings per diluted share of $0.61 in the prior year period; and income

from operations of $31.6 million, compared to $7.6 million in the corresponding quarter of the

prior year.  Reflecting on the Company's results, defendant Fotiades stated:

> We remain very optimistic with elevated uptake for our infection prevention consumable products as enhanced infection prevention protocols become standard practice. The increased adoption and focus on our IP&C solutions drove greater demand for our recurring revenue consumables and new products, enabling us to outperform underlying procedure volume in both our Medical and Dental segments. This resulted in a margin profile that exceeded expectations, mainly driven by favorable mix and volume leverage coupled with our embedded operating discipline across all of our businesses.

**The Proposed Transaction**

26.     On January 12, 2021, Cantel and STERIS issued a joint press release announcing

the Proposed Transaction.  The press release states, in relevant part:

> DUBLIN, IRELAND and LITTLE FALLS, N.J, Jan. 12, 2021 -- STERIS plc (NYSE: STE) ("STERIS" or the "Company") and Cantel Medical Corp (NYSE: CMD) ("Cantel") today announced that STERIS has signed a definitive agreement to acquire Cantel, through a U.S. subsidiary.   Cantel is a global provider of infection prevention products and services primarily to endoscopy and dental Customers.  Under the terms of the agreement, STERIS will acquire Cantel in a cash and stock transaction valued at $84.66 per Cantel common share, based on STERIS's closing share price of $200.46 on January 11, 2021.  This represents a total equity value of approximately $3.6 billion and a total enterprise value of approximately $4.6 billion, including Cantel's net debt and convertible notes.  The agreement has been unanimously approved by the Boards of Directors of both companies.
>
> "We have long appreciated Cantel, which is a natural complement and extension to STERIS's product and service offerings, global reach and Customers," said Walt Rosebrough, President and Chief Executive Officer of STERIS.  "Our companies share a similar focus on infection prevention across a range of healthcare Customers.  Combined, we will offer a broader set of Customers a more diversified selection of infection prevention and procedural products and services.   We welcome the people of Cantel to the STERIS team and firmly believe we will create greater value for our Customers and shareholders together."
>
> Charles M. Diker, Chairman of the Cantel Board of Directors, has separately entered into a voting support agreement along with certain other entities collectively holding approximately 10% of Cantel's outstanding shares.  Mr. Diker said, "We are pleased to reach this agreement with STERIS, which is the culmination of a robust process to achieve an outcome that allows Cantel shareholders to participate in the significant upside of the combined company,

while also providing them with immediate cash value.  Together with STERIS, we believe the value opportunity is compelling, both today and in a post-COVID world, as the combined company will have the scale, breadth and depth to unlock substantial value that will drive further benefits for Cantel shareholders, Customers and all stakeholders."

"We believe Cantel and STERIS are a perfect strategic fit, and this combination is a natural next step for our company, enabling us to accelerate progress on our Cantel 2.0 initiatives and drive enhanced value for shareholders and the healthcare providers and systems we support," said George Fotiades, CEO of Cantel.  "The last year has demonstrated more than ever the importance of innovative and comprehensive infection prevention and control solutions that protect healthcare providers and patients.  Together with STERIS, we will be able to provide a more extensive and innovative suite of offerings to our Customers around the world. Importantly, STERIS recognizes that our proven and talented team is the foundation of Cantel's success and we look forward to working collaboratively to bring our two organizations together."

This transaction brings together STERIS's and Cantel's franchises to create a stronger global business serving a broader set of Customers.  Cantel's largest business, its Medical portfolio, will strengthen and expand STERIS's Endoscopy offerings, adding a full suite of high-level disinfection consumables, capital equipment and services, as well as additional single-use accessories.  Cantel's Dental business extends STERIS into a new Customer segment where there is an increasing focus on infection prevention protocols and processes.  Annual revenue for Cantel in its recent fiscal year ended July 31, 2020, was approximately $1 billion, with adjusted EBIT of approximately $134 million.

**Financial Highlights and Transaction Details**

The companies expect to realize annualized pre-tax cost synergies of approximately $110 million by the fourth fiscal year following the close, with approximately 50% achieved in the first two years.  Cost synergies are expected to be primarily driven by cost reductions in redundant public company and back-office overhead, commercial integration, product manufacturing, and service operations.

Under the terms of the agreement, Cantel common stockholders will receive approximately $16.93 in cash and 0.33787 of a STERIS ordinary share, or a total of value of approximately $84.66 per Cantel common share based on STERIS's closing share price of $200.46 on January 11, 2021.  The transaction is anticipated to close by the end of STERIS's first quarter of fiscal 2022 (ending June 30, 2021), pending customary closing conditions including receipt of regulatory approvals and approval by Cantel stockholders.

STERIS expects to fund the cash portion of the transaction consideration and repay a significant amount of Cantel's existing debt with approximately $2.0 billion of new debt and has obtained fully committed bridge financing.

**Insiders' Interests in the Proposed Transaction**

27.     Cantel insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Cantel.

28.     Notably, Cantel insiders stand to reap substantial financial benefits for securing the deal with STERIS.  If they are terminated in connection with the Proposed Transaction, Cantel's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Named Executive Officer | Cash ($)[2] | Equity ($)[3] | Tax Make Whole ($)[4] | Other ($)[5] | Total ($)[6] |
|---|---|---|---|---|---|
| Charles M. Diker[1] | — | — | — | — | — |
| George L. Fotiades | 3,786,772 | 7,226,491 | 4,662,205 | 10,553 | 15,686,021 |
| Shaun M. Blakeman | 1,446,090 | 1,445,428 | 1,060,035 | 11,120 | 3,962,673 |
| Peter G. Clifford | 3,072,050 | 4,575,729 | 2,393,402 | 11,120 | 10,052,301 |
| Seth M. Yellin | 1,817,964 | 2,011,542 | — | 11,120 | 3,840,626 |
| Jeff Z. Mann | 1,479,863 | 1,660,936 | 1,008,686 | 11,120 | 4,160,605 |

**The Proxy Statement Contains Material Misstatements or Omissions**

29.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Cantel's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

30.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information

concerning: (i) Company management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Centerview; and (ii) the background of the Proposed Transaction.

***Material Omissions Concerning Cantel Management's Financial Projections and Centerview's Financial Analyses***

31.     The Proxy Statement omits material information concerning the financial projections prepared by Cantel management.

32.     For example, with respect to each of the Cantel Forecast and STERIS Forecast, the Proxy Statement fails to disclose all line items underlying the calculation of adjusted EBITDA and unlevered free cash flow.

33.     Moreover, the Proxy Statement sets forth that:

On December 9, 2020, the Cantel Board of Directors convened a telephonic conference, which also was attended by representatives of Centerview. Centerview provided an update to the Cantel Board of Directors regarding the sale process and the revised offer received by STERIS. The Cantel Board of Directors discussed STERIS's offer in light of the significant increase in the price per share of Cantel Common Stock that occurred following Cantel's first quarter earnings announcement. Representatives of Centerview reviewed with the directors Cantel's historical and projected financials and referred to these financials in its financial analysis of various strategic alternatives, including separate analysis of Cantel's Medical, Dental and Life Sciences businesses. Centerview also provided a pro forma financial profile of the combined company giving effect to the STERIS transaction.

Proxy Statement at 53.  Yet, the Proxy Statement fails to disclose: (i) when Cantel management prepared the financial projections reviewed at the December 9, 2020 Board meeting; (ii) whether the Company's financial projections were revised following the December 9 Board meeting and, if so, the timing and nature of such revisions; and (iii) whether the projections relied upon by Centerview for its fairness opinion included Cantel's first quarter earnings.

34.     The Proxy Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Centerview's

fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Cantel's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

35. With respect to Centerview's *Discounted Cash Flow Analysis* of Cantel, the Proxy Statement fails to disclose: (i) Cantel's after-tax unlevered free cash flows for the terminal year; (ii) quantification of the estimated terminal values for Cantel; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.25% to 10.00%; and (iv) the number of fully diluted outstanding shares of Cantel as of January 8, 2021.

36. With respect to Centerview's *Analyst Price Target Analysis* for Cantel, the Proxy Statement fails to disclose: (i) the individual price targets observed by Centerview in the analysis; and (ii) the sources thereof.

37. With respect to Centerview's *Discounted Cash Flow Analysis* of STERIS, the Proxy Statement fails to disclose: (i) STERIS' after-tax unlevered free cash flows for the terminal year; (ii) quantification of the estimated terminal values for STERIS; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.50% to 8.25%; and (iv) the number of fully diluted outstanding shares of STERIS as of January 8, 2021.

38. With respect to Centerview's *Analyst Price Target Analysis* for STERIS, the Proxy Statement fails to disclose: (i) the individual price targets observed by Centerview in the analysis; and (ii) the sources thereof.

39. Additionally, the Proxy Statement sets forth that at a December 9, 2020 Board meeting, "Centerview [ ] provided a pro forma financial profile of the combined company giving

effect to the STERIS transaction." *Id.* The Proxy Statement, however, fails to disclose any financial analyses performed by Centerview for the pro forma combined company.

40.     Without such undisclosed information, Cantel stockholders cannot evaluate for themselves whether the financial analyses performed by Centerview were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Centerview's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

41.     The omission of this information renders the statements in the "Background on the Mergers," "Certain Unaudited prospective Financial Information Prepared by Cantel" and "Opinion of Cantel's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

42.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

43.     The Proxy Statement sets forth that, "[b]etween October 19, 2020 and November 14, 2020, Cantel entered into confidentiality agreements with a total of five prospective buyers, including three of the Strategic Bidders (including a confidentiality agreement entered with STERIS on October 26, 2020) and both Financial Bidders." *Id.* at 52. Critically, the Proxy Statement fails to disclose whether the confidentiality agreements include "don't ask, don't waive" ("DADW") standstill provisions that are still in effect and presently precluding these potential buyers from making a topping bid for the Company.

44.     The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for Cantel.  If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

45.     The disclosure of the terms of the confidentiality agreements is crucial to Cantel stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

46.     The omission of this information renders the statements in the "Background on the Mergers" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and Cantel's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Company management's financial projections, the financial analyses performed by the Company's financial advisor, Centerview, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

52.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

54.     Plaintiff repeats all previous allegations as if set forth in full.

55.     The Individual Defendants acted as controlling persons of Cantel within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Cantel, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

58.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Cantel's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Cantel, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Cantel stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  April 9, 2021                                        **WEISSLAW LLP**

By    */s/ Mark. D. Smilow*
_____
Mark. D. Smilow
Richard A. Acocelli (to be admitted *pro hac vice*)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com

*Attorneys for Plaintiff*